# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-1896V
### Filed: May 1, 2025

|  |  |
|---|---|
| COURTNEY GRAHAM,<br><br>               Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Special Master Horner |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.*
*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION AWARDING DAMAGES[1]

On December 10, 2018, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") in her right shoulder following an influenza ("flu") vaccination that she received on December 13, 2017. (ECF No. 1.) On July 14, 2020, a ruling on entitlement was issued finding petitioner entitled to compensation for her SIRVA. (ECF No. 29.) On April 8, 2025, a damages hearing was held. (*See* Transcript of Proceedings ("Tr.") at ECF No. 93.) At the conclusion of the hearing, the undersigned issued an oral ruling on damages, constituting findings of fact and conclusions of law pursuant to Section 12(d)(3)(A), as follows:

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

THE COURT: Okay. So just by way of a little bit of background, before this case was assigned to me, the Chief Special Master issued a ruling on entitlement on July 14th, 2020, finding Petitioner entitled to compensation for a shoulder injury related to vaccine administration, or "SIRVA." That is located at ECF docket number 29, and also is available online at 2020 WL [4720687].

The ruling on entitlement was based on Respondent's concession in his Rule 4 report that Petitioner was entitled to compensation for a shoulder injury, "consistent with SIRVA" and caused by her December 13th, 2017, flu vaccination. That's ECF number 28 at page 5.

Accordingly, as per Respondent's concession, "The scope of damages to be awarded are limited to Petitioner's SIRVA and resulting sequelae." That's ID at 6.

Although the case was subsequently reassigned to me, I confirm that I do adopt the Chief Special Master's ruling on entitlement as my own, and I intend to award damages based on the scope of damages stated by Respondent in his Rule 4 report.

At the Petitioner's request, I am now going to issue a ruling from the bench with respect to the appropriate amount of compensation for Petitioner's pain, suffering, and emotional distress as provided by Section 15(a)(4) of the Vaccine Act, which allows for awards of up to $250,000 for actual and projected pain and suffering and emotional distress.

As I understand it, only Petitioner's pain, suffering, and emotional distress are at issue for purposes of an award of damages. Do I have that correct?

MR. MILMOE: Yes, Your Honor.

THE COURT: Okay. In light of everything we've talked about, and in light of my consideration of the record, I am at this point concluding that Respondent's motion for discovery at ECF Number 75 is moot.

So moving on to the ruling with respect to damages, I'm going to begin with some legal points that are going to inform the ruling. First, I have to note that Petitioner bears the burden of proof with respect to each element of compensation requested. For that proposition, I cite Brewer versus Secretary of Health and Human Services, Number 93-92V, which is also 1996 WL 147722, at *22-23, which is a Federal Claims Special Master decision dated March 18th, 1996.

Second, there is no mathematical formula for determining pain and suffering. Instead, we generally look at three factors: One, awareness of the

injury; two, severity of the injury; and, three, duration of the suffering. For that proposition, see I.D. versus Secretary of Health and Human Services, Number 04-1593V, which is also 2013 WL 2448125 at *9, a Federal Claims Special Master decision of May 14th, 2013.

Third, with respect to the $250,000 statutory cap on awards for pain and suffering, this ruling adopts the approach articulated in Graves versus Secretary of Health and Human Services, which is 109 Fed. Cl. 579 (2013), which is to say that the $250,000 cap is to be applied after determining the amount of damages rather than operating as a ceiling under which damages must be considered.

Fourth, Special Masters are permitted to consider prior awards in determining what constitutes an appropriate award of damages, though they are not binding. See Doe 34 versus Secretary of Health and Human Services, 87 Fed. Cl. 758[,] 768 (2009).

I apologize. You're going to have to bear with me. There's a long string of citations coming up. The parties cite the following decisions as points of comparison. Petitioner cites Schoonover versus Secretary of Health and Human Services, which is number 16-1324V, 2020 WL 5351341. That's a Special Master decision of August 5th, 2020, that awarded $200,000 for actual pain and suffering and $39,600 in projected pain and suffering; the projected pain and suffering award representing $1,200 per year for the Petitioner's remaining life expectancy.

Lawson versus Secretary of Health and Human Services, Number 18-882V, 2021 Westlaw 688560, a Special Master decision of January 5th, 2021, awarding $205,000 for actual pain and suffering.

Welch versus Secretary of Health Human Services, Number 18-74V, 2021 Westlaw -- WL -- 1795205, a Special Master decision of April 5th, 2021, awarding $210,000 for actual pain and suffering.

McDormand versus Secretary of Health and Human Services, Number 19-814V, 2021 WL 5505698, a Special Master decision of October 8th, 2021, awarding $200,000 for actual pain and suffering.

And Elmakky, which is E-l-m-a-k-k-y, versus Secretary of Health and Human Services, 17-2032V, 2021 Westlaw -- WL -- 6285619, a Special Master decision of December 3rd, 2021, awarding $205,000 in actual pain and suffering.

Respondent cites the following cases as comparable, or at least relevant: Glanville versus Secretary of Health and Human Services, Number 19-1973V, 2023 Westlaw 6213271, a Special Master decision of August 25th, 2023, awarding $145,000.

Maxfield versus Health and Human Services, 2020 -- or Number 21-869V, 2024 WL 1999662, a Special Master decision of April 4th, 2024, awarding $185,000.

Tappendorf versus Secretary of Health and Human Services, Number 20-1592V, 2024 Westlaw 1299566, a Federal Claims Special Master decision of February 23rd, 2024, awarding $185,000.

Lang versus Secretary of Health and Human Services, Number 17-995V, 2022 Westlaw 3681275, a Special Master decision of July 25th, 2022, awarding $195,000. That actually was a decision by the undersigned.

Lavigne, L-a-v-i-g-n-e, versus Secretary of Health and Human Services 19-1298V, 2022 WL 2275853, a Special Master decision of May 12th, 2022, awarding $198,000. Almost done.

Meirndorf versus Health and Human Services -- Secretary of Health and Human Services, 19-1876V, 2022 WL1055475, a Special Master decision of March 7th, 2022, awarding $200,000.

Edminster versus Secretary of Health and Human Services, 19-184V, 2023 Westlaw 3059218, a Special Master decision of April 24th, 2023, awarding $205,000.

And, like Petitioner, Respondent also cites the Lawson case, which I've already cited.

I am mindful of these prior decisions regarding damages for SIRVA. All of the prior decision I mentioned obviously are for damages for SIRVA. However, I do not merely rely on any prior decision to determine the amount of Petitioner's damages in this case. Instead, I have reviewed the previous SIRVA awards, the arguments presented by the parties, and the totality of the evidentiary record, including, of course, testimony elicited today.

The primary considerations in forming pain and suffering in SIRVA cases is the severity and the duration of the shoulder pain, and reduced range of motion. Numerous aspects of Petitioner's medical history potentially speak to these issues, including the total duration of Petitioner's pain, total duration of Petitioner's reduced range of motion, the length of time over which the Petitioner actively treated the condition, the duration and outcome of physical therapy, the modalities of treatment -- for example, steroid injections or surgeries, et cetera -- the severity of MRI or surgical findings, the subjective reports of pain levels, and the ultimate prognosis.

And, of course, as I mentioned, I also take into account the testimony that I heard today. Today's testimony primarily has the effect of allowing me to better understand Petitioner's personal experience of her injury, which is an

4

especially important consideration given that pain and suffering are inherently subjective concepts.

For a brief summary of Petitioner's medical history and the issues that the parties are disputing, I'm going to quote Respondent's brief at ECF Number 89, page 13. "In this case, Petitioner first reported shoulder pain 15 days after vaccination. She underwent two surgical procedures, and her second surgery included a manipulation under anesthesia. She also attended four rounds of PT (99 visits), had one steroid injection, and she filed records showing active treatment through December of 2019. While Petitioner continued to see Dr. Perkins once a year through May 2023, Petitioner made clear in 2020 and thereafter she was only seeing Dr. Perkins as her disability insurer required her to see him annually. (See Exhibit 17 at 1; 19 at 1; 21 at 1; 29 at 1). It does not appear that Petitioner agreed to any additional care despite Dr. Perkins' consistent explanation that she may improve with conservative treatment and that further surgery or another manipulation under anesthesia may be an option. See Exhibit 17 at 2; Exhibit 19 at 2; Exhibit 21 at 2; Exhibit 29 at 2)."

The primary point of contention, as explained by the parties' briefs, is Petitioner's status from December 2019 onward. As noted, Respondent argues that Petitioner's follow ups with Dr. Perkins do not constitute genuine ongoing treatment and there is therefore -- and there is therefore not argument -- there's therefore not evidence of ongoing disability from that point forward. And that's indicated at Respondent's brief at ECF Number 89, pages 13 and 14.

Petitioner argues that her annual follow ups with Dr. Perkins demonstrate that her condition remains present and significant after seven and a half years and has stagnated for so long that it should be considered permanent. She argues that her condition is stagnant, but yet it is severe enough that Dr. Perkins has recommended additional surgery, arthroscopic capsular release, and manipulation under general anesthesia -- or under anesthesia. That argument is made at ECF Number 90, page 22, citing Exhibit 21, page 2.

I addressed a similar concern in a prior case involving GBS, Rastetter versus Secretary of Health and Human Services at 19-1850V, 2023 Westlaw 5552317, which is a Special Master decision of August 3rd, 2023. In that case, the Petitioner had returned to his physical therapist for an evaluation for purposes of documenting the sequelae of his GBS, but declined any treatment recommendations, noting he only wanted the evaluation for purposes of litigation.

I explained that, "Without a bona fide ongoing treatment relationship, the credibility and reliability of the history provided by Petitioner and his mother is not enhanced merely because it was recorded by a medical provider. This does not mean the information should be assumed to be inaccurate; however, it is at best merely unsworn repetition of the testimonial evidence Petitioner and his mother have otherwise provided (ID at *10). However, I did not discount the weight to be given the direct observations and impressions of the physical therapist."

In this case, while I agree with Respondent that the primary purpose of Petitioner's follow ups with Dr. Perkins were primarily for a box-checking exercise for purposes of her disability claim, nothing on this record calls Dr. Perkins' experience or credibility into question, and he was her treating orthopedist.

Dr. Perkins' Encounter records at Exhibits 17, 19, 21, and 29 include sufficient physical exam findings and direct clinical observations to confirm that Petitioner has experienced significant ongoing pain and reduced range of motion through May of 2023.

Based on those records and the testimony provided today, I find Petitioner has experienced seven and a half years of history -- seven and a half years of pain and suffering to date, with the greatest pain being up to and around December of 2019, though her ongoing reduced range of motion is severe enough to warrant a recommendation for a third surgery.

However, especially in light of Petitioner herself stressing in her brief that Dr. Perkins has recommended additional surgery, I cannot agree with Petitioner that Dr. Perkins' records demonstrate her injury to be permanent. Certainly I understand that a seven and a half year history of pain and reduced range of motion is not encouraging, and I understand and appreciate Petitioner's reasons for not wanting to pursue the additional treatment. However, there is no medical opinion in the presented records indicating that Petitioner's condition is permanent, and the contention that Petitioner's condition is "stagnant" is premised on her current pattern of pursuing primarily conservative measures such as home exercise, whereas she acknowledges the surgery has been recommended.

I have not located any instance where Dr. Perkins has suggested the Petitioner has reached her maximum medical improvement or otherwise indicated that her injury is permanent.

Looking at the comparable cases cited by the parties, I find that Edmonster, Lawson, and Elmakky are the most similar. All three of those petitioners were awarded $205,000. Edmonster was a 56-year-old Petitioner. Her

injury lasted for more than five years. She had a steroid injection, 111 PT sessions, two surgeries, and used prescription medication.

Lawson was a 48-year-old Petitioner. Her injury lasted for more than four years. She had three surgeries, seven steroid injections, four rounds of PT, and plasma injections.

Elmakky's age is not indicated in the decision awarding damages. She had three surgeries and her injury persisted for about four years. Her course was deemed comparable to that of the Lawson petitioner.

As compared to Lawson and Elmakky, Petitioner had a longer duration of pain and suffering, but fewer surgeries and less substantial treatment overall. I realized that no comparison is perfect. There was a lot of discussion during the hearing today of the "little things" that personally affect Petitioner's experience of pain and suffering. I take those discussions very seriously and I factor them into this ruling. I have to stress, however, that many of those little things were also experienced by these other petitioners, and so a lot of that experience is included within the assessments of $205,000 for those petitioners.

That being said, no two petitioners are identical, and pain and suffering is subjective. And I think there are specific factors in this case that I take additional notice of based on both medical records and the testimony provided today. Both Petitioner's testimony and the medical records indicate the Petitioner bore an added psychological burden in coping with her SIRVA and its consequences, being a person who has been diagnosed with anxiety, depression and OCD. For example, see Exhibit 16 at pages 63 and 94, which are appointments from August of 2018 and March of 2019 that note how Petitioner's psychological conditions were affecting her ability to recover from her SIRVA.

I stress that this is not a finding that Petitioner's SIRVA exacerbated her psychological condition and is not a finding based on Respondent's expert report by Dr. I-a-r-o-v-i-c-i. It is simply recognition that the Petitioner's psychological condition left her more vulnerable to experiencing the pain, suffering, and emotional distress caused by her injury.

I also note that Petitioner is the spouse of a service member who was deployed for approximately one year during the course of her injury, and that is another factor that weighs into this consideration.

Balancing all of these considerations and considering the record as a whole, and understanding that placing a specific dollar figure on an award of pain and suffering is always an exercise in rough justice, I find that $220,000 represents a reasonable and appropriate award for Petitioner's actual pain,

suffering, and emotional distress, and that there is not preponderant evidence to support an award for projected pain and suffering. That is the extent of my conclusion.

(Tr. 153-65.)

In light of the above, **I award petitioner a lump sum payment of $220,000.00, representing compensation for actual pain and suffering to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement to petitioner**.  This amount represents compensation for all damages available under § 300aa-15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[3]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.